**LEPPLA, Appellant,**

v.

**SPRINTCOM, INC. et al., Appellees.**

[Cite as *Leppla v. Sprintcom, Inc.*, 156 Ohio App.3d 498, 2004-Ohio-1309.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19969.

Decided March 19, 2004.

500

Gary J. Leppla, pro se.

Benjamin J. Ockner, for appellee.

---

BROGAN, Judge.

{¶ 1} Gary J. Leppla appeals from the trial court's entry of summary judgment against him on his complaint alleging that a cellular telephone tower built near his residence is a common-law nuisance.

{¶ 2} Leppla advances two assignments of error on appeal. First, he contends that the trial court erred in entering summary judgment against him on his nuisance claim. Second, he claims that the trial court erred in refusing to consider the constitutionality of R.C. 519.211, which provides that a township lacks regulatory authority over cell towers located in certain areas. Upon review, we conclude that the trial court did err in entering summary judgment against Leppla on his nuisance claim. We find no merit, however, in Leppla's argument regarding the trial court's failure to consider the constitutionality of R.C. 519.211. Accordingly, the trial court's judgment will be affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

I

{¶ 3} The record reflects that in July 1999, the German Township Board of Zoning Appeals ("BZA") approved a variance request and granted a permit allowing appellee Sprintcom, Inc. to construct a cell-phone tower on property owned by appellees Charles and Bobby Stiver, more than a quarter mile from residential property owned by Leppla.

{¶ 4} Sprintcom constructed the tower in January 2000, directly across a field from Leppla's property. Leppla first noticed the tower toward the end of that month when it lit the night sky. In the weeks that followed, the tower's lighting operated erratically. During daylight hours, it frequently emitted an inappropriate strobe light, and it sometimes lacked any lighting at night. Although Sprintcom admits that the lighting temporarily malfunctioned, it provided the trial court with an affidavit from German Township zoning administrator DiAnna Fite, who averred that the problem has been corrected. In response, Leppla filed an affidavit in which he averred that the problem had not been corrected. In fact, he averred that the tower has had no lighting, day or night, since August 25, 2001. (Leppla affidavit, attached to Doc. # 29 at ¶ 4–5.) The lack of lighting on the tower has caused Leppla to fear for his safety due to the presence of low-flying aircraft in the area.

{¶ 5} Based on his concern over the operation of the cell-phone tower, Leppla originally filed suit against Sprintcom, the Stivers, and the German Township Board of Trustees in the United States District Court for the Southern District of Ohio. Leppla claimed that the facility was a nuisance and sought various forms of relief under state and federal law. On March 18, 2002, the district court entered judgment against Leppla on all of his federal claims. It then dismissed his pendent state-law claims without prejudice to refiling in state court. Leppla did not appeal from the district court's decision.

{¶ 6} On April 24, 2002, he filed the present action alleging, among other things, that the cell tower is a nuisance under Ohio law. The appellees later moved for summary judgment. On May 20, 2003, the trial court sustained the appellees' motion. With regard to the nuisance claim, the trial court identified the alleged nuisance as "prior occurrences of malfunctioning lights." The trial court then identified the alleged injury suffered by Leppla as a decrease in his property value. It rejected the nuisance claim, however, finding no evidence that the prior malfunctioning had caused a decrease in the value of Leppla's property. The trial court also refused to consider Leppla's argument that R.C. 519.211, which limits the ability of townships to regulate cell-phone towers, is unconstitutional. The trial court held that this issue had been resolved in the federal court action and, in any event, that Leppla lacked standing to make such a challenge. This timely appeal followed.

## II

{¶ 7} In his first assignment of error, Leppla contends that the trial court erred in entering summary judgment against him on his nuisance claim. In support, he advances two arguments. First, he claims that the trial court did not credit his affidavit testimony that low-flying aircraft in the vicinity of the unlit tower caused an unreasonable risk of harm. Leppla insists that this risk itself makes the cell tower a "qualified nuisance." Second, he claims that the trial court erred in finding no evidence that the unlit tower had caused a decrease in his property value. According to Leppla, his own affidavit constituted sufficient evidence to avoid summary judgment.

{¶ 8} In response to Leppla's arguments, the appellees first contend that his nuisance claim is preempted by the Federal Aviation Act and administrative regulations promulgated thereunder. They next assert that no private right of action exists for a violation of federal cell-tower lighting regulations. Finally, the appellees argue that Leppla's nuisance claim fails on the merits. Although the appellees discuss various types of nuisances, Leppla's appellate brief makes clear that he alleges the existence of a qualified nuisance. (See Appellant's brief at 5–7.) With regard to this type of nuisance, the appellees note that negligence must

be proven. They contend that Leppla failed to present evidence establishing that the "temporary" malfunctioning of the tower lights was caused by "negligence on the part of anyone." Finally, the appellees argue that while Leppla was competent to testify as to the value of his property, he was not competent to testify "as to the cause of any change in value or the lawfulness of any such cause."

{¶ 9} Upon review, we easily may dispose of the appellees' argument that no private right of action exists under the Federal Aviation Act or regulations promulgated by the Federal Aviation Administration concerning cell-tower lighting requirements. Leppla appears to concede that neither the Act nor its accompanying regulations authorize an express or implied private right of action. We note, however, that he has disavowed any intent to pursue such a claim, advancing instead only a common-law nuisance claim. Thus, the absence of a private right of action under the federal statute and regulations is immaterial. See *Ishikawa v. Delta Airlines, Inc.* (C.A.9, 2003), 343 F.3d 1129, 1132 ("The argument that the federal scheme does not create a private right of action is a red herring. Ishikawa did not pursue some supposed private right of action under the federal scheme.").

{¶ 10} We turn next to the appellees' argument that Leppla's common-law nuisance claim is preempted by federal law. The trial court rejected this argument, and we agree that Leppla's common-law nuisance action is not preempted, at least insofar as he alleges that Sprintcom's cell tower is a nuisance when it is unlit in violation of federal lighting standards.[1]

{¶ 11} It is well settled that the Supremacy Clause of the federal Constitution grants Congress the power to preempt state law. *Minton v. Honda of Am. Mfg., Inc.* (1997), 80 Ohio St.3d 62, 68, 684 N.E.2d 648, abrogated on other grounds by *Geier v. Am. Honda Motor Co., Inc.* (2000), 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914. In addition, " 'a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.' " *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 260, 626

1. In his complaint, Leppla alleged that the tower was a nuisance "whether lit or unlit, properly or improperly." In his appellate brief, however, Leppla's nuisance argument focuses on the trial court's rejection of his claim that the tower is a nuisance when operating improperly (i.e., when it is unlit) because its presence in the dark sky creates a safety hazard that harms the value of his property. (Appellant's brief at 5-7.) Likewise, in his reply brief, Leppla contends that "the vicinity where low flying aircraft at the height of the tower are frequently apparent, presents a risk and nuisance not preempted under federal law." (Appellant's Reply brief at 4.) We note too that Leppla previously disclaimed any intent to argue that the mere proximity of the tower to his property makes it a nuisance for "aesthetic" reasons. Thus, we will confine our analysis to determining whether federal law preempts Leppla's claim that the cell tower constitutes a nuisance when not properly lit.

N.E.2d 85, quoting *Louisiana Pub. Serv. Comm. v. Fed. Communications Comm.* (1986), 476 U.S. 355, 369, 106 S.Ct. 1890, 90 L.Ed.2d 369.

 {¶ 12} In *Minton,* supra, the Ohio Supreme Court recognized three ways state law can be preempted by the Supremacy Clause: (1) where federal law expressly preempts state law (express preemption); (2) where federal law has occupied the entire field (field preemption); or (3) where there is a conflict between federal law and state law (conflict preemption). *Minton,* supra, 80 Ohio St.3d at 69, 684 N.E.2d 648. In the case of express preemption, Congress explicitly defines the extent to which its enactments preempt state law. *English v. Gen. Elec. Co.* (1990), 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.Ed.2d 65. In the case of field preemption, "state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a 'scheme of federal regulation * * * so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" Id., 496 U.S. at 79, 110 S.Ct. 2270, 110 L.Ed.2d 65, quoting *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447. In the case of conflict preemption, state law is preempted "where it is impossible for a private party to comply with both state and federal requirements," or "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id., quoting *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581. Field preemption and conflict preemption are both forms of implied preemption. *Gade v. Natl. Solid Wastes Mgt. Assn.* (1992), 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73.

{¶ 13} In the present case, the appellees do not argue that the Federal Aviation Act and the Federal Aviation Administration's lighting regulations expressly preempt Leppla's common-law nuisance claim. Nor do the appellees appear to contend that a conflict exists between the federal statutory and regulatory scheme and Leppla's nuisance claim based on the cell tower's inoperable lights. Indeed, the opposite is true. Leppla argues that the tower is a nuisance because it does not comply with the Federal Aviation Administration's lighting requirements. Thus, his nuisance claim is in harmony, not conflict, with federal law.

{¶ 14} The basis of the appellees' argument is that federal law completely occupies the field of airspace safety, thereby impliedly preempting Leppla's state-law nuisance claim. In support, the appellees stress that "[t]he United States Government has exclusive sovereignty of airspace of the United States." Section 40103(a)(1), Title 49, U.S.Code. They also note that Congress has directed the

Federal Aviation Administration to "promote safe flight of civil aircraft in air commerce by prescribing * * * regulations and minimum standards for * * * practices, methods, and procedure the Administrator finds necessary for safety in air commerce * * *." Section 44701(a)(5), Title 49, U.S.Code. Those regulations include Federal Aviation Regulations Part 77, Title 14, C.F.R., pursuant to which the Federal Aviation Administration has issued Advisory Circulars setting detailed standards for the lighting of airspace obstructions. The appellees also cite *Gustafson v. Lake Angelus* (C.A.6, 1996), 76 F.3d 778, 786, for the proposition that federal aviation regulations "preempt local law in regard to * * * navigable airspace, and noise control[.]"

{¶ 15} Upon review, we are inclined to agree that the extensive statutory and regulatory scheme discussed by the appellees "occupies the field" with regard to airspace safety, particularly the lighting requirements for Sprintcom's cell-phone tower. Such a conclusion is warranted based on the undeniable federal interest in ensuring airspace safety and the presence of detailed federal regulations governing the lighting of airspace obstructions. See, e.g., *Schneidewind v. ANR Pipeline Co.* (1988), 485 U.S. 293, 300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (observing that "field preemption" properly may be found "where the pervasiveness of the federal regulation precludes supplementation by the States" or "where the federal interest in the field is sufficiently dominant"); *Abdullah v. Am. Airlines, Inc.* (C.A.3, 1999), 181 F.3d 363, 365 (finding "implied federal preemption of the entire field of aviation safety"); *Air Line Pilots Assn., Internatl. v. Quesada* (C.A.2, 1960), 276 F.2d 892, 894 ("The Federal Aviation Act was passed by Congress for the purpose of centralizing in a single authority—indeed, in one administrator—the power to frame rules for the safe and efficient use of the nation's airspace."); *Kohr v. Allegheny Airlines, Inc.* (C.A.7, 1974), 504 F.2d 400, 404 (recognizing that the purpose of the FAA is "to centralize in the Administrator of the Federal Aviation Administration the power to promulgate rules for the safe and efficient use of the country's airspace").

{¶ 16} While the federal government's occupation of the field with regard to airspace safety and, more specifically, the lighting of airspace obstructions precludes state regulation in that area, it does not follow that federal law necessarily preempts Leppla's common-law nuisance claim, which rests upon an alleged violation of the federal standards. In *Silkwood v. Kerr–McGee Corp.* (1983), 464 U.S. 238, 256, 104 S.Ct. 615, 78 L.Ed.2d 443, the Supreme Court permitted state-law tort remedies for violations of the Atomic Energy Act even though Congress intended to occupy the field with regard to nuclear safety regulation. In so ruling, the *Silkwood* court found no indication that Congress intended to preclude state tort remedies and also noted the absence of any

remedy in the Atomic Energy Act for persons injured by radiation exposure. Id., 464 U.S. at 251, 256, 104 S.Ct. 615, 78 L.Ed.2d 443.

{¶ 17} In the context of aviation, the federal Third Circuit Court of Appeals has held that state tort remedies are available for violations of the Federal Aviation Act and its accompanying regulations. Despite the fact that federal law preempts the field of aviation safety, the Third Circuit observed in *Abdullah* that state damage remedies are compatible with federal aviation standards.[2] *Abdullah*, supra, 181 F.3d at 375. In light of the Supreme Court's *Silkwood* decision, the *Abdullah* court also noted its inability to "infer from Congress's intent to federally preempt the standards of care, that Congress also intended to bar state and territorial tort remedies." Id., 181 F.3d at 376; see, also, *Bieneman v. Chicago* (C.A.7, 1988), 864 F.2d 463, 472–473 (concluding that state-law damages remedies remain available for violations of Federal Aviation Administration standards); *Cleveland v. Piper Aircraft Corp.* (C.A.10, 1993), 985 F.2d 1438, 1441 (recognizing that Congress may grant the federal government the exclusive right to regulate safety in a given field without preempting state-law tort remedies).

{¶ 18} After reviewing the foregoing authorities, we agree with the trial court's determination that Leppla's nuisance claim based on a failure to comply with federal obstruction lighting requirements is not preempted by the Federal Aviation Act or the regulations promulgated by the Federal Aviation Administration. The remaining question, then, is whether the trial court properly entered summary judgment in favor of the appellees on the merits of that claim.

{¶ 19} As noted above, Leppla alleges that the unlit cell tower is a qualified nuisance for two reasons. First, he claims that it is a nuisance because it presents an unreasonable risk of harm due to the presence of low-flying aircraft. Second, he claims that the risk of harm from the unlit tower has caused a decrease in his property value, thereby making the tower a nuisance. The trial court entered summary judgment against Leppla on his nuisance claim, reasoning as follows:

{¶ 20} "The Plaintiff argues that there is 'obvious evidence of negligence by Defendants in allowing the continuation of a cell phone tower intermittently without lights for an extended period of time.' The Plaintiff has failed to introduce evidence to demonstrate that there exists an issue of fact as to whether the alleged negligence of the Defendants in the operation of the facility creates an unreasonable risk of harm that has resulted in injury to the Plaintiff. The concrete injury alleged by the Plaintiff is a loss in property value, yet the Plaintiff

---

2. In reaching this conclusion, the *Abdullah* court relied in part on the Federal Aviation Act's "savings clause," which reads: "A remedy under this part is in addition to any other remedies provided by law." Section 40120(c), Title 49, U.S.Code.

does not offer evidence to show that the alleged prior occurrences of malfunctioning lights has caused a decrease in his property value."

{¶ 21} Upon review, we conclude that the trial court erred in entering summary judgment against Leppla, insofar as he claims that the unlit cell tower is a qualified nuisance. " '[A] civil action based upon the maintenance of a qualified nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in injury. The dangerous condition constitutes the nuisance. The action for damages is predicated upon carelessly or negligently allowing such condition to exist. * * * The allegations of nuisance and negligence therefore merge, as the nuisance claims rely upon a finding of negligence.' " (Citations omitted.) *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 275–276, 595 N.E.2d 855.

{¶ 22} Leppla first argues that the unlit cell tower is a qualified nuisance because it creates an "unreasonable risk of harm" to his safety. We disagree. As noted in *Allen Freight Lines*, a qualified nuisance exists when a negligent condition creates an unreasonable risk of harm that "ultimately result[s] in injury." Id. Thus, a risk of harm, standing alone, does not constitute a qualified nuisance in the absence of some actual injury. In his second argument, however, Leppla identifies an actual injury underlying his qualified-nuisance claim. In particular, he argues that the danger posed by the unlit cell tower has caused his property value to decline. The trial court rejected this argument, finding no evidence that the "alleged prior occurrences of malfunctioning lights [have] caused a decrease in his property value." We find the trial court's conclusion problematic for two reasons.

{¶ 23} First, the record contains evidence raising a genuine issue of material fact as to whether the cell-tower lights remain completely inoperable. Indeed, Leppla has averred that the tower has had no lighting whatsoever, day or night, since August 25, 2001. (Leppla affidavit, attached to Doc. # 29 at ¶ 4–5.) In the context of summary judgment, this assertion of fact must be accepted as true. Therefore, the trial court erred to the extent it implied, by its reference to "prior occurrences of malfunctioning," that the problem has been corrected. Although the appellees filed an affidavit stating that the problem has been corrected, Leppla's affidavit to the contrary creates a genuine issue of material fact.

{¶ 24} Second, the record contains evidence to support a finding that the unlit cell tower has damaged Leppla's property value. Leppla's own affidavit and his complaint provide sufficient evidence on this issue to avoid summary judgment. In his affidavit, Leppla attested to the truth and accuracy of the allegations in his complaint. As a result, the facts pled in the complaint must be

accepted as true for purposes of summary judgment and construed most strongly in favor of Leppla. In his complaint, Leppla stated that the "defective" operation of the cell tower has caused a loss in his property value. He based this determination on his "consultation with real estate experts in the vicinity[.]"

{¶ 25} The appellees concede that Leppla was entitled to opine as to the value of his property, both before the cell tower was constructed and after its erection. See *Jones v. Dayton Power & Light Co.* (Dec. 14, 1994), Greene App. No. 94–CA–49, 1994 WL 702062; *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 347, 513 N.E.2d 737. They contend, however, that he cannot opine as to the reason for the alleged decrease in his property value. In particular, they insist that he cannot testify that the unlit cell tower caused the decline in his property value. We disagree. Although Leppla may not be the best witness to testify as to the effect the unlit cell tower had on the value of his property, his testimony is sufficient to avoid summary judgment. As noted above, Leppla is competent to testify as to the value of his property before and after the erection of the cell-phone tower. In conjunction with that testimony, we believe that he also is entitled to give the factual basis for his opinions. *Columbus v. Papageorgiou* (Sept. 3, 1987), Franklin App. No. 86AP–1157, 1987 WL 16478 ("In testifying as to the value of property, the owner is certainly entitled to testify as to the facts which formed the basis for that opinion."); *Jones,* supra, at * 1 (holding that a landowner could opine "that his property was diminished $11,000 in value as a result of the removal of the trees"). Indeed, it would be odd to allow Leppla to testify that his property was worth "X" immediately before the cell tower was built and "Y" thereafter, but not allow him to state the basis for that opinion. In any event, given that Leppla is competent to testify as to the value of his property immediately before and immediately after the tower was built, a trier of fact reasonably could infer from such testimony that the unlit tower caused the difference in value. Therefore, we find a genuine issue of material fact for trial.

{¶ 26} In an effort to avoid reversal of the trial court's summary judgment ruling, the appellees next argue that Leppla failed to establish negligence on their part. In particular, they contend that he offered no evidence to prove that the "occasional temporary lighting failure" was caused by their negligence. The trial court did not resolve this issue, which was briefly touched on in the motion for summary judgment. Instead, the trial court found no evidence that the "alleged negligence" had caused an actual injury to Leppla. Thus, the trial court appears to have presumed the existence of negligence for purposes of its summary judgment ruling.

{¶ 27} Upon review, we find no merit in the appellees' argument that the record is devoid of evidence of negligence, at least on the part of Sprintcom. In their brief, the appellees stress the absence of evidence as to what caused the

"occasional temporary" failure of the cell tower's lights. Regardless of why the lights initially malfunctioned, however, we believe that a trier of fact could find Sprintcom negligent in allowing its 260-foot cell-phone tower to stand in complete darkness every night since August 25, 2001, in the vicinity of low-flying aircraft and in apparent violation of Federal Aviation Administration lighting requirements, which require airspace obstructions to be illuminated. (See Leppla affidavit, attached to Doc. # 29 at ¶ 5, 7–8, 21.) In addition, Leppla's affidavit constitutes evidence that this dangerous condition has caused a decline in his property value, thereby resulting in actual harm. With regard to appellees Charles and Bobby Stiver, however, we note that they merely leased to Sprintcom the land on which the cell tower stands. We decline to decide whether lessors may be held liable if their lessee is found negligent in the maintenance or operation of a cell tower. We do not reach this specific issue because it was not briefed by either party or addressed by the trial court. For present purposes, we conclude only that the record reveals a genuine issue of material fact as to the alleged negligence of Sprintcom. As a result, the trial court erred in entering summary judgment against Leppla on his common-law nuisance claim.

### III

{¶ 28} In his second assignment of error, Leppla claims that the trial court erred in refusing to consider the constitutionality of R.C. 519.211, which provides that a township lacks regulatory authority over cell towers located in certain areas. The trial court declined to address Leppla's constitutional challenge for two reasons. First, it noted that Leppla had challenged the constitutionality of R.C. 519.211 in a prior federal-court action against the same parties, and the federal district court had dismissed the claim for lack of standing. Given the federal court's rejection of the claim, the trial court held that res judicata precluded Leppla from litigating the statute's constitutionality in state court. Second, even without regard to res judicata, the trial court independently found that Leppla lacked standing to challenge the constitutionality of the statute.

{¶ 29} On appeal, Leppla argues that the federal district court's decision on the issue of standing should not have res judicata effect because it turned on "uniquely * * * federal court requirements" that do not apply in Ohio state courts. Leppla also asserts, albeit with little analysis, that he has standing to challenge the constitutionality of R.C. 519.211.

{¶ 30} After reviewing the record, we agree that the federal district court's standing decision does not have res judicata effect on Leppla's present challenge to the constitutionality of R.C. 519.211. The federal district court addressed the issue of standing solely under Article III of the United States Constitution, which vests federal courts with jurisdiction over certain "cases" and

"controversies." Article III of the federal Constitution does not apply to Ohio state courts, at least not directly. Because Ohio state courts are "not bound by the federal doctrine of standing," see *Cincinnati School Dist. v. State Bd. of Edn.* (1996), 113 Ohio App.3d 305, 313, 680 N.E.2d 1061, the federal district court's ruling regarding Article III standing has no preclusive effect in the present case.

{¶ 31} Nevertheless, we agree with the trial court's independent assessment that Leppla lacks standing to challenge the constitutionality of R.C. 519.211. Although Article III of the United States Constitution has no direct application, Ohio courts often look to federal law when discussing the requirements for standing under Ohio law. In *Palazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 175, 512 N.E.2d 971, for example, the Ohio Supreme Court cited federal law to support its holding that "the constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." See, also, *State v. Davis* (Dec. 31, 1997), Miami App. No. 97–CA–17, 1997 WL 797722 (observing that the Ohio Supreme Court generally follows federal decisions on standing despite the fact that state courts are not bound by federal standing doctrines).

{¶ 32} In the present case, Leppla cannot demonstrate that he has been injured by the alleged unconstitutionality of R.C. 519.211 or that a finding of unconstitutionality would provide any relief. Leppla argued in the trial court that the statute violates equal-protection principles because it treats townships differently than municipalities. In particular, he asserted that the statute gives townships the ability to regulate cell towers located only in areas zoned for "residential" use, whereas municipalities apparently have a broader ability to regulate cell-phone towers within their territorial limits. Assuming, purely arguendo, that this distinction violates the Equal Protection Clause, it did not harm Leppla in any way.

{¶ 33} The record reflects that the German Township BZA did regulate the placement and construction of the Sprintcom tower at issue in this case. Sprintcom submitted to a variance hearing "under protest," arguing that the BZA lacked authority to regulate the proposed tower because it was to be built in an area not zoned for "residential use" within the meaning of R.C. 519.211. After conducting a hearing, the BZA granted a variance permit and authorized the tower to be built.

{¶ 34} If R.C. 519.211 were declared unconstitutional, then one of two things would happen. Either the BZA would be precluded from regulating cell towers at all, or it would be permitted to regulate cell towers located anywhere within

the township limits, depending on whether R.C. 519.211 is viewed as a grant of authority or a limitation thereon. Either way, striking the statute as unconstitutional would not benefit Leppla. If the BZA were precluded from regulating cell towers at all, then Sprintcom would be entitled to erect the tower without obtaining township approval. Alternatively, if the BZA were permitted to regulate cell towers located anywhere within township limits, then Sprintcom would need a permit, which it already has obtained. Thus, as far as Leppla's interests are concerned, it matters not whether R.C. 519.211 violates equal-protection principles by treating townships differently than municipalities.[3] Accordingly, he lacks standing to challenge the statute's constitutionality, and we overrule his second assignment of error.

## IV

{¶ 35} Based on the reasoning and citation of authority set forth above, the judgment of the Montgomery County Common Pleas Court is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

FREDERICK N. YOUNG, J., concurs.

GRADY, J., concurs separately.

GRADY, Judge, concurring separately.

{¶ 36} I would overrule plaintiff-appellant's second assignment of error on the authority of Hunter v. Pittsburgh (1907), 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151, which held that the powers a state confers by law on its political subdivisions may be granted or denied in the state's absolute discretion. Hunter involved a due-process challenge, but the principle it announced applies as well to an equal-protection challenge to a state's decision to deny a power to one class of its political subdivisions that it permits another class to exercise, which is plaintiff-appellant's particular challenge to R.C. 519.211.

---

3. In light of this conclusion, we need not address the appellees' alternate argument that Leppla failed to comply with R.C. 2721.12, which requires the Ohio Attorney General to be served with any claim challenging the constitutionality of a statute.