HAYNES, Appellant,

v.

DAYTON METROPOLITAN HOUSING AUTHORITY et al., Appellees.

[Cite as *Haynes v. Dayton Metro. Hous. Auth.*, 188 Ohio App.3d 337, 2010-Ohio-2833.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23590.

Decided June 18, 2010.

338

Matthew N. Currie and Todd Souve, for appellant.

Christopher Green, for appellees.

FAIN, Judge.

{¶ 1} Plaintiff-appellant, Wyticha Haynes, appeals from the dismissal of her complaint against defendant-appellees, Dayton Metropolitan Housing Authority ("DMHA") and its director, Gregory Johnson. Haynes contends that the trial court erred by granting DMHA's Civ.R. 12(B)(6) motion to dismiss. Specifically, she claims that the trial court erred in determining that she had failed to present any claims capable of being disposed of by declaratory judgment, the vehicle she chose for her complaint. Haynes contends that the trial court erred by finding that her state claims were preempted by federal law, by finding that the claims she presented were moot, and by finding that she was not entitled to speedy relief. She further contends that the trial court erred by determining that she had failed to exhaust her administrative remedies and that those administrative remedies precluded an award of monetary damages.

{¶ 2} We conclude that the trial court did err in its determination regarding preemption of Haynes's claims for relief. We further find that the issue of mootness, and thus the right to speedy relief, cannot be resolved upon this record. Finally, we conclude that this record does not allow us to address the issue of exhaustion of administrative remedies.

{¶ 3} The judgment of the trial court is reversed, and this cause is remanded for further proceedings.

## I

{¶ 4} Haynes was a tenant of Cliburn Manor, a public-housing complex owned by DMHA. DMHA sought, and received, approval from the United States Department of Housing and Urban Development ("HUD") for the demolition of Cliburn Manor. Haynes was ultimately relocated to another housing development owned by DMHA.

{¶ 5} Thereafter, Haynes filed a complaint for a declaratory judgment, as well as for injunctive and monetary relief, against DMHA and its director, Gregory Johnson, in both his personal and official capacity. The complaint alleges that DMHA failed to comply with R.C. 163.55 and 163.56 when relocating her to the new residence. DMHA moved to dismiss, pursuant to Civ.R. 12(B)(6), contending that Section 1437p, Title 42, U.S.Code, governs the demolition of public housing units and the attendant relocation of tenants displaced by the demolition. DMHA also argued that its duties under Section 1437p take precedence over the relocation requirements of R.C. Chapter 163. Haynes filed a responsive pleading contesting DMHA's motion to dismiss.

{¶ 6} The trial court granted the motion to dismiss upon a finding that Haynes had failed to present a real and justiciable controversy meriting declaratory relief. Specifically, the trial court found that Section 1437p, Title 42, U.S.Code, preempts the provisions in R.C. Chapter 163 and that the Ohio statutes in question are not applicable to the activities of DMHA in demolishing Cliburn Manor. The trial court further found that declaratory relief is not appropriate, because the "issues raised are moot as to Haynes' current situation," and that there is thus no need for "speedy relief." The trial court also determined that Haynes had failed to exhaust the administrative remedies available under R.C. Chapter 163, because she did not file an appeal with DMHA as the displacing agency. Finally, the trial court found that "declaratory relief is not appropriate for determining" a monetary award under the provisions of R.C. Chapter 163.

{¶ 7} Haynes appeals from the dismissal of her complaint.

## II

### A—The Federal Statutes

{¶ 8} "The United States Housing Act of 1937 (Pub.L. No. 75–412, 50 Stat. 888, codified as amended at [Section 1437 et seq., Title 42, U.S.Code]) is a fairly typical federal grant-in-aid program." *Arroyo Vista Tenants Assn. v. Dublin* (May 23, 2008), N.D.Cal. No. C 07–05794 MHP, 2008 WL 2338231. "In exchange for various types of federal funds, local public housing agencies * * * must comply with an assortment of conditions. Among other things, the Act regulates rent calculation, housing quality standards and inspections, lease provisions and

tenant grievance procedures." (Citations omitted.) Id. This legislation is designed to help states "address the shortage of housing affordable to low-income families" and to "remedy * * * the acute shortage of decent and safe dwellings for low-income families." Section 1437(a)(1), Title 42, U.S.Code.

{¶ 9} At issue in this case is Section 1437p of the Housing Act, which "governs the demolition and disposition of public housing facilities." *Anderson v. Jackson* (2009), 556 F.3d 351, 356. "[Section] 1437p is explicitly directed to the Secretary of HUD. The entire provision is framed in terms of when the Secretary should approve or disapprove a demolition application. By directing the statutory command to the Secretary of HUD, Congress placed the onus of compliance on the federal government. Though the statute indirectly notifies local housing authorities as to what they must show in their demolition application for it to be approved, it is HUD that receives the direct command, and HUD ultimately controls compliance with the statute by either approving or disapproving the applications." Id. at 358.

{¶ 10} Section 1437p "lists criteria for when the Secretary of HUD shall approve or disapprove an application for demolition from a local public housing authority." Id. at 356. "For example, the Secretary shall approve an application for demolition if the local agency certifies, among other things, that 'the project or portion of the public housing project is obsolete as to physical condition, location or other factors, making it unsuitable for housing purposes.' " Id., quoting Section 1437p(a)(1)(A)(i), Title 42, U.S.Code. "The local agency must also certify that it will notify the residents ninety days prior to the displacement date and that each displaced family will be offered comparable housing." Id., citing Section 1437p(4)(A)(iii). Section 1437p further requires, before approval of an application, that a housing authority demolishing public housing units provide for "the payment of the actual and reasonable relocation expenses of each resident," as well as for "counseling for residents who are displaced." Finally, pertinent to this case, the statute also specifically notes that the "Uniform Relocation and Real Property Acquisition Policies Act of 1970 [Section 4601, Title 42, U.S.Code] shall not apply to activities under this section." Section 1437p(g), Title 42, U.S.Code.

{¶ 11} "The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 makes relocation benefits available for individuals and businesses that satisfy the statutory definition of a displaced person." *Alexander v. United States Dept. of Housing & Urban Dev.* (1979), 441 U.S. 39, 99 S.Ct. 1572, 60 L.Ed.2d 28, syllabus. A "displaced person" is "any person who * * * moves * * * as the result of the acquisition of * * * real property * * * or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency." Id. at 42, 99 S.Ct. 1572,

60 L.Ed.2d 28, citing Section 4601(6), Title 42, U.S.Code. In other words, federal agencies must pay certain benefits to those whom it causes to be displaced by a federal project.

{¶ 12} This legislation was designed "to establish a uniform policy for the fair and equitable treatment of owners, tenants, and other persons displaced by the acquisition of real property in Federal and federally assisted programs to the end that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole. This language leaves little doubt that Congress' concern was still with displacements caused by the acquisition of property for a Government program or project." *Alexander* at 51–52, 99 S.Ct. 1572, 60 L.Ed.2d 28. "Congress did not expect to provide assistance for all persons somehow displaced by Government programs." Id. at 60, 99 S.Ct. 1572, 60 L.Ed.2d 28. "Congress chose to condition eligibility for relocation benefits on the agency's purpose in acquiring property * * *." Id. at 66, 99 S.Ct. 1572, 60 L.Ed.2d 28.

### B—The Ohio Statute

{¶ 13} The Ohio Relocation Assistance Act, R.C. Chapter 163.51 et seq., was enacted pursuant to mandate set forth in the Uniform Relocation and Real Property Acquisition Policies Act of 1970, which required states to "enact similar statutes in order to qualify for federal aid." *Weir v. Consol. Rail Corp.,* 12 Ohio App.3d 63, 67, 12 OBR 204, 465 N.E.2d 1341. Of relevance hereto are R.C. 163.55 and 163.56. If applicable, R.C. 163.55 requires the displacing agency to pay a displaced person up to $5,200 to enable the person to lease or rent a "comparable replacement dwelling." R.C. 163.56 requires the displacing agency to provide a "relocation assistance advisory program" for displaced persons. These programs must provide information on "availability, prices and rentals, of comparable decent, safe, and sanitary sales and rental housing," assure availability of comparable replacement dwellings, and provide "other advisory services to displaced persons in order to minimize hardships to them."

### III

{¶ 14} Haynes's first assignment of error is as follows:

{¶ 15} "Whether the trial court's legal conclusion that Ms. Haynes failed to state a claim for declaratory relief is contrary to law."

{¶ 16} Haynes contends that the trial court erred in determining that she failed to present any issue suitable for determination by declaratory judgment. In support, she argues that the trial court erroneously determined that R.C. 163.55

and 163.56 are preempted by Section 1437p, Title 42, U.S.Code. She further argues that her claims are not moot and that she is entitled to speedy relief.

{¶ 17} We first note that "[a] motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Civ.R.12(B)(6), tests the sufficiency of a complaint. In order to prevail, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief." *Smith v. Ohio Adult Parole Auth.*, Champaign App. No. 2009 CA 22, 2010-Ohio-1131, 2010 WL 1041454, ¶ 33. "The court must construe the complaint in the light most favorable to the plaintiff, presume all of the factual allegations in the complaint as true, and make all reasonable inferences in favor of the plaintiff." Id. We utilize a de novo standard when reviewing a trial court's decision to dismiss a complaint pursuant to Civ.R. 12(B)(6). Id. at ¶ 35.

### A—The Federal Preemption Issue

{¶ 18} This court has noted that "[i]t is well settled that the Supremacy Clause of the federal Constitution grants Congress the power to preempt state law." *Leppla v. Sprintcom, Inc.*, 156 Ohio App.3d 498, 2004-Ohio-1309, 806 N.E.2d 1019, ¶ 11. However, in analyzing a preemption claim, "[c]ourts must start with a presumption against preemption and instead assume federal law is not to supersede the historic police powers of the states unless that is the clear and manifest purpose of Congress." *Ferron v. RadioShack Corp.*, 175 Ohio App.3d 257, 2008-Ohio-1511, 886 N.E.2d 286, ¶ 18. Thus, "the critical question * * * is whether Congress intended federal law to supersede state law." Id.

{¶ 19} "[T]he Ohio Supreme Court [has] recognized three ways state law can be preempted by the Supremacy Clause: (1) where federal law expressly preempts state law (express preemption); (2) where federal law has occupied the entire field (field preemption); or (3) where there is a conflict between federal law and state law (conflict preemption)." *Leppla* at ¶ 12. "In the case of express preemption, Congress explicitly defines the extent to which its enactments preempt state law. In the case of field preemption, 'state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a scheme of federal regulation * * * so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' In the case of conflict preemption, state law is preempted 'where it is impossible for a private party to comply with both state and federal requirements,' or 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Field preemption

and conflict preemption are both forms of implied preemption." (Citations omitted.) Id.

{¶ 20} In this case, although not argued by DMHA in the trial court, it appears that the trial court found the Ohio statutes expressly preempted by the federal statute.[1] The trial court correctly noted that Section 1437p(g), Title 42, U.S.Code, expressly prohibits the application of the Uniform Relocation and Real Property Acquisition Policies Act of 1970 to demolition or disposition of public housing. The trial court went on find that "by prohibiting the application of the [Uniform] Relocation Act to [Section 1437p, Title 42, U.S.Code,] Congress referenced the entire act, including the mandate for States to implement relocation acts. A reading of [Section 1437p(g), Title 42, U.S.Code] which would allow the State acts to apply to activities under [Section 1437p, Title 42, U.S.Code] would render Congress's prohibition meaningless."

{¶ 21} We do not conclude, as did the trial court, that this necessarily prohibits the application of the Ohio Relocation Assistance Act to the demolition or disposition of public housing projects. There is no language in Section 1437p expressly prohibiting the application of any state relocation legislation to the demolition of public housing. Had Congress intended to prohibit the application of any state legislation, it could have included language clearly expressing that intent. Thus, we conclude that the trial court erred in its determination that R.C. Chapter 163 et seq. is expressly preempted by the provisions of Section 1437p.

{¶ 22} The trial court did not address DMHA's contention that Congress intended to occupy the field with regard to the demolition of public housing (field preemption) or that application of the Ohio statutes would place significant additional requirements upon DMHA (conflict preemption).

{¶ 23} DMHA argues that "it is wholly apparent that Congress intended [Section 1437p, Title 42, U.S.Code] to encompass all of the areas concerning the Demolition and Disposition of Public Housing by a [public housing authority]." In support, DMHA contends that the federal statute addresses all aspects of the relocation of public-housing residents, leaving no room for any state action. DMHA further argues that applying R.C. 163.51 et seq., to the demolition of public housing would create a burden on it that would be an obstacle to the accomplishment of Congress's intent to provide safe housing. Specifically, DMHA claims that applying the provisions of R.C. 163.55 would require it to pay

---

1. DMHA admitted in its motion for dismissal that "it is true that there is no expressed intent by congress to have [Section 1437p, Title 42, U.S.Code] supersede state law." DMHA instead argued the theory of implied preemption.

an additional $5,200 per resident above the reasonable moving costs required by Section 1437p.

{¶ 24} We begin with the issue of field preemption. From our reading of Section 1437p, we cannot say that Congress intended to occupy the field with regard to the actions of a public-housing authority seeking to demolish public-housing units. As noted above, the statute is directed at the secretary of HUD, and only indirectly to housing authorities. While the statute does set forth a list of items with which a housing agency must comply in order for the secretary of HUD to grant a demolition application, we cannot say that Congress intended this list to be exhaustive or exclusive. There is no indication in this statute that Congress intended to prohibit a public-housing authority from providing more assistance to its displaced tenants. In other words, the checklist for the secretary of HUD may plausibly represent a floor, not a ceiling, providing minimum services and benefits that a housing authority must provide to its tenants, without limiting the ability of state and local housing authorities to provide more services or benefits. Thus, we do not read the federal statute as occupying the field so comprehensively as to preempt state laws.

{¶ 25} The more compelling question in our view is whether the utilization of the Ohio Relocation Assistance Act in a demolition situation creates an undue burden on DMHA. Specifically, DMHA contends that possibly having to pay, in addition to the reasonable moving expenses mandated by Section 1437p, an additional $5,200 in benefits, as required by the Ohio Act, to each of its residents that it seeks to relocate would result in a financial burden upon DMHA that was not intended by Congress. DMHA further contends that this financial burden would impact the ability of public-housing agencies to promote the goal of maintaining safe, decent housing for low-income individuals and families.

{¶ 26} This argument is logical. The possible imposition of $5,200 in additional benefits per resident, over and above that cited by Section 1437p, is significant, and would likely have a detrimental effect upon the budget of a public-housing authority, adversely affecting its ability to provide housing for low-income persons or families.

{¶ 27} However, in view of the fact that the record on appeal is devoid of any evidence regarding the finances available to DMHA, we cannot sustain the trial court's decision on these grounds. While it is clear that DMHA receives funding from the federal government and from tenant rents, it is also possible that the state contributes to DMHA's budget, and that the state would be the entity paying for the additional benefits. In other words, if the additional funding is provided by the state, and does not come out of DMHA's federal funds, then it is doubtful that Congress would have intended to prohibit the additional benefits

thereby funded. However, if the only source of the additional payments comes from federal funding and tenant rents, then it seems likely that Congress would not have intended such a result. We conclude that resolution of this issue is not possible, given that the record before us is limited to a review of the face of the complaint, without the additional evidence that would be available in a motion for summary judgment or at trial.

### B—Mootness and the Necessity for Speedy Relief

{¶ 28} The trial court found that Haynes had failed to present a justiciable controversy subject to declaratory relief because she had been provided $1,100 in moving expenses and had maintained housing during the term of her complaint.

{¶ 29} This finding ignores the fact that Haynes's complaint alleges that she was not placed in comparable housing, as required by Section 1437p, Title 42, U.S.Code. It further ignores that the complaint is capable of being construed as alleging that she would have been able to rent comparable housing while seeking long-term housing had she been paid the benefits available under R.C. 163.55, and that she would have had more opportunity to seek such housing.

{¶ 30} We do not conclude that Haynes's allegations have been rendered moot by the mere fact that she was placed in a different public-housing unit. There is nothing in this record to indicate that the new housing is comparable or to establish that Haynes's having had the R.C. 163.55 benefits would have had no effect upon her housing situation. It is possible that this issue could be found to be moot after the record were developed in a motion for summary judgment, or in a trial, but in this case mootness is not an issue capable of determination on a Civ.R. 12(B) motion.

{¶ 31} The first assignment of error is sustained.

### IV

{¶ 32} Haynes's second and third assignments of error state:

{¶ 33} "Whether the trial court's legal conclusion that Ms. Haynes failed to exhaust administrative remedies is contrary to law.

{¶ 34} "Whether the trial court's legal conclusion that monetary relief under R.C. 163.55 is not appropriate is contrary law."

{¶ 35} Haynes contends that the trial court erred in determining that she had failed to exhaust her administrative remedies and that given the need to pursue an administrative appeal, monetary relief is not available for claims of violations of R.C. 163.55. Haynes argues that "even if administrative remedies must be exhausted, [DMHA] failed to provide Haynes notice of any administrative proce-

dures and Haynes indeed exhausted any administrative remedies available to her."

{¶ 36} We need not address the issue whether Haynes is required to exhaust any administrative remedies available to her. This record does not contain any competent evidence to indicate whether Haynes was provided notice of her right to an administrative appeal or whether she in fact adequately filed such an appeal. Again, this is a matter that would be more suitable for determination by a motion for summary judgment than by a motion to dismiss.

{¶ 37} Haynes's second and third assignments of error are sustained.

## V

{¶ 38} All of Haynes's assignments of error being sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

DONOVAN, P.J., and BROGAN, J., concur.