[Cite as *Haynes v. Dayton Metro. Hous. Auth.*, 2012-Ohio-3282.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| WYTICHA HAYNES | : | |
| Plaintiff-Appellant | : | C.A. CASE NO.    25042 |
| v. | : | T.C. NO.    09CV956 |
| DAYTON METROPOLITAN HOUSING AUTHORITY, et al. | : | (Civil appeal from Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___20th___ day of ___July___, 2012.

· · · · · · · · · ·

MATTHEW N. CURRIE, Atty. Reg. No. 0078656 and ANEEL L. CHABLANI, Atty. Reg. No. 0083043, 333 West First Street, Suite 500B, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellant

CHRISTOPHER C. GREEN, Atty. Reg. No. 0077072, Dayton Metropolitan Housing Authority, 400 Wayne Avenue, Dayton, Ohio 45410
      Attorney for Defendants-Appellees

· · · · · · · · · ·

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Wyticha

Haynes,

filed February 21, 2012. Haynes appeals from the January 23, 2012 decision of the trial court which sustained the motion for summary judgment of the Dayton Metropolitan Housing Authority ("DMHA"). The trial court concluded that the financial requirements imposed upon DMHA by Ohio Revised Code Chapter 163.51 et seq., specifically R.C. 163.55 ("Additional payment for rental dwelling or down payment on house") and R.C. 163.56 ("Relocation assistance advisory program"), conflict with and are accordingly preempted by the federal United States Housing Act of 1937 ("Housing Act"), Section 42 U.S.C. 1437p ("Demolition and disposition of public housing"), because the state financial requirements "would adversely affect DMHA's ability to complete its mission."

{¶ 2} DMHA filed the motion for summary judgment at issue following this Court's reversal and remand of the trial court's decision which granted DMHA's motion to dismiss Haynes' complaint. *See Haynes v. Metropolitan Housing Authority*, 188 Ohio App.3d 337, 2010-Ohio-2833, 935 N.E.2d 473 (2d Dist.). This Court previously summarized the facts herein as follows:

Haynes was a tenant of Cliburn Manor, a public housing complex owned by DMHA. DMHA sought, and received, approval from the United States Department of Housing and Urban Development (HUD) for the demolition of Cliburn Manor. Haynes was ultimately relocated to another housing development owned by DMHA.

Thereafter, Haynes filed a complaint for declaratory judgment, as well as for injunctive relief and monetary relief, against DMHA and its director, Gregory Johnson, in both his personal and official capacity. The Complaint

alleges that DMHA failed to comply with R.C. 163.55 and 163.56 when relocating her to the new residence. DMHA moved to dismiss, pursuant to Civ.R. 12(B)(6), contending that Section 1437p, Title 42, U.S.Code, governs the demolition of public housing units and the attendant relocation of tenants displaced by the demolition. DMHA also argued that its duties under Section 1437p take precedence over the relocation requirements of R.C. Chapter 163. Haynes filed a responsive pleading contesting DMHA's motion to dismiss.

The trial court granted the motion to dismiss upon a finding that Haynes had failed to present a real and justiciable controversy meriting declaratory relief. Specifically, the trial court found that Section 1437p, Title 42, U.S. Code, preempts the provisions in R.C. Chapter 163 and that the Ohio Statutes in question are not applicable to the activities of DMHA in demolishing Cliburn Manor. The trial court further found that declaratory relief is not appropriate, because the "issues raised are moot as to Haynes' current situation," and that there is thus no need for "speedy relief." The trial court also determined that Haynes had failed to exhaust the administrative remedies available under R.C. Chapter 163, because she did not file an appeal with DMHA as the displacing agency. Finally, the trial court found that "declaratory relief is not appropriate for determining" a monetary award under the provisions of R.C. Chapter 163. *Id*., ¶ 4-6.

**{¶ 3}** This Court determined that the Housing Act is "designed to help states

'address the shortage of housing affordable to low-income families' and to 'remedy * * * the acute shortage of decent and safe dwellings for low-income families.' Section 1437(a)(1), Title 42, U.S.Code." *Id.*, ¶ 8. This Court further determined that the possible imposition of the financial requirements in Chapter 163.55, namely "$5200 in additional benefits per resident, over and above that cited by Section 1437p, is significant, and would likely have a detrimental effect upon the budget of a public-housing authority, adversely impacting its ability to provide housing for low-income persons or families." *Id.*, ¶ 26.

{¶ 4} This Court concluded as follows:

However, in view of the fact that the record on appeal is devoid of any evidence regarding the finances available to DMHA, we cannot sustain the trial court's decision on these grounds. While it is clear that DMHA receives funding from the federal government and from tenant rents, it is also possible that the state contributes to DMHA's budget, and that the state would be the entity paying for the additional benefits. In other words, if the additional funding is provided by the state, and does not come out of DMHA's federal funds, then it is doubtful that Congress would have intended to prohibit the additional benefits thereby funded. However, if the only source of the additional payments comes from federal funding and tenant rents, then it seems likely that Congress would not have intended such a result. We conclude that resolution of this issue is not possible, given that the record before us is limited to a review of the face of the complaint, without the additional evidence that would be available in a motion for

summary judgment. . . . *Id*., ¶ 27.

**{¶ 5}** On March 14, 2011, Haynes filed a motion for summary judgment as to all claims in her complaint, asserting that R.C. 163.55 and 163.56 are not preempted by the Housing Act, that DMHA violated those provisions, and that she is entitled to summary judgment. The trial court overruled her motion, finding that, on the record before it, genuine issues of material fact exist as to whether R.C. 163.55 and 163.56 are "conflict preempted" by the Housing Act.

**{¶ 6}** DMHA also filed its motion for summary judgment on March 14, 2011, asserting that R.C. 163.55 and 163.56 conflict with and are preempted by the Housing Act and expressly preempted by the Ohio Administrative Code ("O.A.C."), that Haynes was relocated into comparable housing and that no justiciable controversy accordingly exists, that sovereign immunity prohibits the damages sought by Haynes, and that the attorney fees Haynes seeks are barred by law. The trial court overruled in part DMHA's motion as to the issue of preemption, as to the issue of whether comparable housing was provided, and as to the issue of attorney fees, and it sustained the motion as to sovereign immunity from damages.

**{¶ 7}** Regarding conflict, the trial court noted that compliance with R.C. 163.55 and 163.56 "would decrease the amount of federal funds available to support the purpose of the Housing Act." The court further determined that certain provisions of the O.A.C. "emphasized" the conflict between R.C. 163.55 and 163.56, and the Housing Act.

**{¶ 8}** Regarding the issue of preemption, the trial court noted as follows:

Though the Rule 56 evidence presented by DMHA in its current

motion for summary judgment establishes that only federal funding was used for the demolition of Cliburn Manor, this does not, under the Second District's analysis, end the discussion. This is because the Rule 56 record does not address the budget of DMHA as a whole and the availability of any state or local government funding for the purpose of relocation assistance. Therefore, genuine issues of material fact exist as to whether O.R.C. 163.55 and 163.56 are preempted. The necessary additional analysis can be summarized as follows: If there is sufficient state or local funding available to DMHA so that the requirements of O.R.C. 163.55 and 163.56 can be implemented without an undue financial burden upon DMHA, Congress did not intend preemption of these additional benefits. If, on the other hand, the additional benefits, in particular the additional $5,200.00 relocation benefit, would cause an undue financial burden upon DMHA, thus "adversely affecting its ability to provide housing for low-income persons or families," conflict preemption results. Quoting *Haynes*, ¶ 26.

{¶ 9} On October 21, 2011, with leave of court, DMHA filed a second post remand motion for summary judgment on the issue of conflict preemption. Therein it argued that following "the state's statutes stands as an obstacle to the full intent of Congress because DMHA's overall budget is not supported by state or local funding and no state or local funds were provide for DMHA's relocation expenses," and that application of R.C. 163.55 and 163.56 "would cause an undue financial burden upon DMHA." Attached to the motion is the affidavit of Gregory Johnson, Chief Executive Officer for DMHA. DMHA

also submitted a supplemental affidavit from Johnson in its reply memorandum.

{¶ 10} In response, Haynes asserted that the record failed to establish that DMHA received no state or local funding, and that there "is no reliable evidence to support the position that it is impossible for Defendant to follow both federal and state law * * *."

{¶ 11} In sustaining DMHA's motion, the trial court found that DMHA, through the Johnson affidavits, met its Rule 56 burden. The court noted that Johnson has personal knowledge of DMHA's budget, and that he averred that "no State or local funding contributed to the DMHA's operating budget and DMHA did not receive any State or local funding for any relocation services that DMHA requires [sic] for the years 2006 through 2008." The court noted that while Johnson's affidavits stated that DMHA "from time to time" receives, as a "sub-grantee," funds which HUD initially grants to local government, DMHA lacks discretion concerning the use of those funds, since they must be used in a manner prescribed by the local government and HUD. The trial court noted that Johnson averred that DMHA received no sub-grantee funds for the demolition of Cliburn Manor or the relocation of its residents.

{¶ 12} The trial court further determined that DMHA provided competent summary judgment evidence that "at the time of the Cliburn Manor demolition, a requirement to fund additional relocation assistance through R.C. §§ 163.55 and 163.56 would have served as an obstacle to Congress' purpose as expressed by 42 USC 14[3]7 et seq." The court relied upon the deposition testimony of Mary Del Raso, the Senior Manager of Real Estate Investment and Development for DMHA, specifically her testimony that DMHA's "needs were in excess of eighty million dollars and that DMHA receives less

than six million dollars in funding." The court noted that her testimony "highlights that a non-funded requirement by the State of Ohio to increase relocation assistance above and beyond that which is required by [the Housing Act] would diminish DMHA's ability to provide adequate housing to its disadvantaged residents, with the provision of such housing being the Congressional intent embodied by 42 U.S.C. 1437." Since DMHA established that it received no state or local funding for the Cliburn Manor demolition or relocation, the court found that "the additional financial requirements imposed by R.C. §§ 163.55 and 163.56 conflict with and are preempted by 42 U.S.C. 1437 et seq. because the additional financial requirements would likely adversely affect DMHA's ability to complete its mission."

{¶ 13} Having determined that DMHA met its burden for purposes of summary judgment, the court next determined that Haynes failed to establish specific facts demonstrating a genuine issue for trial concerning DMHA's funding sources. The court noted Haynes' argument that it is not impossible for DMHA to comply with R.C. 163.55 and 163.56, and the court concluded, "the issue is not whether it is impossible for DMHA to comply with both the state and federal requirements but whether the application of the state statutory requirements on DMHA would stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' (Citations omitted)."

{¶ 14} Finally, in a footnote, the trial court noted that funding sources are subject to change, and accordingly, "the determination of whether R.C. 163.55 and 163.56 apply to the demolition of a particular DMHA owned property depends upon the availability of state or local funding at the time of the demolition and relocation process."

{¶ 15}  Haynes asserts three assignments of error which we will consider together. They are as follows:

"THE TRIAL COURT ERRED WHEN IT APPLIED THE WRONG CONFLICT PREEMPTION TEST."

And,

"THE TRIAL COURT ERRED WHEN IT MISAPPLIED THE CONFLICT PREEMPTION TEST."

And,

"THE TRIAL COURT ERRED WHEN IT HELD THAT RULE 56 EVIDENCE SUPPORTS A FINDING THAT FOLLOWING STATE LAW WOULD SERVE AS [AN] OBSTACLE TO THE PURPOSE EXPRESSED IN 42 U.S.C. 1437p."

{¶ 16}  As this Court has previously noted:

Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. * * * Our review of the trial court's decision to grant summary judgment is de novo. *Fifth Third Mtge. Co. v. Bihn*, 2d Dist. Montgomery No. 24691, 2012-Ohio-637, ¶ 15.

"'De Novo review means that this court uses the same standard that the trial court should

have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.' * * * Therefore, the trial court's decision is not granted any deference by the reviewing appellate court." *CARE Risk Retention Group v. Martin*, 2d Dist. Montgomery No. 24791, 2012-Ohio-1426, ¶ 12.

{¶ 17} As this Court noted in remanding this matter to the trial court, "'[i]t is well settled that the Supremacy Clause of the federal Constitution grants Congress the power to preempt state law.' *Leppla v. Sprintcom, Inc.*, 156 Ohio App.3d 498, 2004-Ohio-1309, 806 N.E.2d 1019, ¶ 11." *Haynes*, ¶ 18. There is a presumption against preemption, and courts must "'assume federal law is not to supersede the historic police powers of the states unless that is the clear and manifest purpose of Congress.' *Ferron v. Radioshack Corp.*, 175 Ohio App.3d 257, 2008-Ohio-1511, 886 N.E.2d 286, ¶ 18." *Haynes*, *id*. Accordingly, "'the critical question * * * is whether Congress intended federal law to supersede state law.' *Id*." *Haynes*, *id.*

{¶ 18} As we further previously noted, preemption is accomplished in three ways: (1) express preemption occurs when the federal law expressly preempts the state law; (2) field preemption occurs when the federal law occupies the entire field of law; and (3) conflict preemption occurs when there is a conflict between the federal and state laws. *Id*., ¶ 19. Regarding conflict preemption, "state law is preempted 'where it is impossible for a private party to comply with both state and federal requirements,' or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' (citation omitted)." *Id*.

{¶ 19} Haynes initially asserts, "the trial court applied a conflict preemption test

that is inconsistent with the test endorsed by the Ohio Supreme Court." Haynes asserts that the court improperly applied a "funding test" and found conflict based upon DMHA's evidence that it did not receive state or local funding to accomplish the demolition of Cliburn Manor and the relocation of its residents. Haynes further argues that the trial court improperly focused on "the obstacle with the DMHA mission, not Congressional intent." Finally, Haynes asserts that material facts are in dispute as to whether R.C. 163.55 and 163.56 stand as an obstacle to the accomplishment and execution of the full purposes and objectives of 42 U.S.C. § 1437p. Specifically, Haynes asserts that the trial court erred in relying upon the deposition testimony of Mary Del Raso. Haynes argues that there is no evidence establishing Del Raso's personal knowledge of DMHA finances outside of its "capital fund grant," nor evidence establishing how DMHA would follow its obligations under R.C. 163.55. Haynes argues that additional federal funds are available to DMHA beyond the capital fund grant, in the form of an operating subsidy, and also an administrative fee from HUD, and that DMHA further "maintains a reserve administrative fee," citing the deposition testimony of Elaine Letton, Senior Manager for the Housing Choice Voucher Program. Haynes further argues that the Johnson affidavit and the Del Raso deposition do not discuss "how DMHA planned for the relocation of Ms. Haynes or how DMHA would implement the planning requirement of RC. 163.56."

{¶ 20} DMHA responds that the O.A.C. explicitly forbids the application of R.C. 163.55 and 163.56 to the demolition of public housing performed pursuant to 42 U.S.C.1437p. DMHA states that the trial court applied the correct conflict preemption test. DMHA directs our attention to this Court's determination in *Haynes* regarding

Congressional intent and asserts that the intent of Congress and DMHA's mission are identical.

{¶ 21} Haynes replies that DMHA's arguments regarding the O.A.C. are not properly before us, since DMHA did not assert them in its second motion for summary judgment. Haynes further asserts that "the administrative code cannot control when it results in the opposite outcome from that which a state statute requires, and, second, the explicit language of the administrative code at issue only applies to the application of the code itself, not the application of the state statute." Haynes again argues that a genuine issue of material fact exists regarding DMHA's "budget as a whole."

{¶ 22} Regarding Haynes' assertion that the trial court applied a "funding test" as opposed to the test correctly set forth in *Haynes*, we disagree. Regarding Congressional intent, as this Court previously noted, the Housing Act "is designed to help states 'address the shortage of housing affordable to low-income families' and to 'remedy * * * the acute shortage of decent and safe dwellings for low-income families.'" *Haynes*, ¶ 8, quoting Section 1437(A)(1), Title 42, U.S.Code. In addition to the reasonable relocation expenses that DMHA must pay, pursuant to the Housing Act, when it demolishes public housing, R.C. 163.55(A) mandates an additional payment "not to exceed five thousand two hundred fifty dollars," to each resident it seeks to relocate. R.C. 163.56 requires the DMHA in part to determine the need of displaced persons for relocation assistance, provide information regarding availability prices and rentals of comparable housing, assure that comparable replacement dwellings are available prior to displacement, supply information regarding federal and state housing programs, and provide other advisory services to minimize

hardships.

{¶ 23} The affidavits of Gregory Johnson provide that he has personal knowledge of the DMHA budget, which "comes exclusively from the federal government," and specifically from HUD. According to Johnson, no "State or local funding contributes to the DMHA operating budget," and such funding is not available for the relocation services that DMHA provides. Johnson avers that the DMHA administers a "Public Housing" program and a "House Choice Voucher" program. He states that the Public Housing program is funded solely by HUD and tenant rents, and that the House Choice Voucher program is funded solely by HUD. According to Johnson, State and local governments occasionally receive federal grants "to aid in local development," and the local governments occasionally provide those federal dollars to DMHA, "as a sub-grantee," but that the funds "that may be sub-granted to DMHA are designated for specific projects or tasks and are in no fashion permitted to be used at DMHA's discretion." Johnson further avers that those funds "do not contribute to the overall budget of DMHA, Public Housing Program, or the Housing Choice Voucher Program," and that no money sub-granted to DMHA was used "to fund the demolition of Cliburn Manor or relocate the residents from Cliburn Manor." Finally, Johnson avers that no "State or local funding contributed to the DMHA's operating budget and DMHA did not receive any State or local funding for any relocation services that DMHA requires [sic] for the years 2006 through 2008."

{¶ 24} Further, Mary Del Raso, DMHA's senior manager of real estate investment and development, testified in deposition that she manages the capital fund for DMHA, which is a grant "that DMHA receives on an annual basis that is used for the modernization,

rehabilitation, potential acquisition of properties owned by [DMHA]," and that the funds used to pay for the relocation process of residents displaced due to demolition come from the capital fund. Del Raso indicated that the needs of the DMHA for capital improvements in the existing inventory of rental units, as well as the administrative costs associated therewith, exceed eighty million dollars, and that the DMHA receives federal funding to meet those needs annually in an amount "usually around five and a half to six million dollars." According to Del Rasso, the capital fund "doesn't cover the costs of all the needs of the agency by any stretch of the imagination." Del Raso further stated that the money in the capital fund comes from HUD, not the state, and that DMHA also receives an operating subsidy in federal dollars.

{¶ 25} Elaine Letton testified that DMHA's Housing Choice Voucher program receives federal funds from HUD to assist families with their rent each month, and that DMHA receives an administrative fee from HUD that "goes to our salaries and benefits." She stated that "at times" the DMHA has a "reserve" administrative fee.

{¶ 26} Having thoroughly conducted de novo review of the record, and viewing the evidence most strongly in favor of Haynes, we agree with the trial court that DMHA's evidence demonstrates that a non-funded requirement by the State that increases DMHA's relocation expenses beyond those required by the Housing Act stands as an obstacle to the accomplishment of Congress' purposes and objectives, namely to "remedy * * * the acute shortage of decent and safe dwellings for low-income families." *Haynes*, ¶ 8, quoting Section 1437(a)(1), Title 42, U.S.Code. We further agree with DMHA that its mission is identical to Congress' purposes and objectives as stated in the Housing Act. In other words,

DMHA's evidence establishes that the only source for the additional requirements in R.C. Chapter 163.51 is federal funding and tenant rents, and that the additional requirements will thus have a detrimental effect upon DMHA's budget. The deposition of Elaine Letton, relied upon by Haynes, establishes that DMHA receives federal and not state or local funds, and Haynes thus failed to "set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Accordingly, the trial court correctly concluded that R.C. 163.55 and 163.56 conflict with and are preempted by 42 U.S.C. 1437 et seq.

{¶ 27} We further conclude, as did the trial court in overruling DMHA's first motion for summary judgment, that a reading of the O.A.C. supports our conclusion that a conflict exists. O.A.C. 5501:2-5-01(A) states that the "purpose of rules 5501:2-5-01 to 5501:2-5-06 of the Administrative Code is to amplify sections 163.51 to 163.62 of the Revised Code and to implement the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970." ("Assistance and Acquisition Act") As this Court previously noted, "R.C. Chapter 163.51 et seq., was enacted pursuant to a mandate set forth" in the Assistance and Acquisition Act. *Haynes*, ¶ 13. O.A.C. 5501:2-5-01(H) provides that the "implementation of rules 5501:2-5-01 to 5501:2-5-06 of the Administrative Code must be in compliance with other applicable federal and state laws and implementing regulations." The Housing Act governs the demolition of Cliburn Manor and provides that the Assistance and Acquisition Act "shall not apply to activities under this section," namely demolition of public housing. Section 1437p(g), Title 42, U.S.Code. To avoid a conflict with the Housing Act, the relocation requirements that the Assistance and Acquisition Act mandates must be funded by State or local funds.

{¶ 28} Further, O.A.C. 5501:2-5-01(C) provides: "No duplication of payments: no person shall receive any payment under rules 5501:2-5-01 to 5501:2-5-06 of the Administrative Code if that person receives a payment under federal, state, or local law or insurance proceeds which is determined by the agency to have the same purpose and effect as such payment under rules 5501:2-5-01 to 5501:2-5-06 of the Administrative Code."

{¶ 29} For the foregoing reasons, Haynes' assigned errors are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Matthew N. Currie
Aneel L. Chablani
Christopher C. Green
Hon. Michael L. Tucker